## Andrew B. Floyd *v.* Darwin A. Hotchkiss, Appellant.

*Contract—Breach of warranty—Question for jury.*

A written warranty was given plaintiff by defendant of which there was a breach whenever certain stock, purchased by the plaintiff on the strength of such warranty, fell below its par value in the market. *Held,* that an action was maintainable whenever the defendant after notice and demand failed to make good the said warranty.

The question of value involved is not one of real or ultimate, but of present, available money value and being in dispute is necessarily for the jury.

*Appeals—Defective assignment—Failure to allow exception below.*

An assignment not in accordance with the rules and on a point where no exception was allowed, although one was asked for, will not be considered.

*Evidence—Hearsay declarations.*

Where the question is as to the present money value of certain stock mere declarations by the president of the company as to such value are inadmissible. Such declarations are but mere hearsay, and as such inadmissible.

Submitted May 18, 1897. Appeal, No. 40, May T., 1897, by defendant, from judgment of C. P. Crawford Co., May T., 1895, No. 115, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER and ORLADY, JJ. Reversed.

Assumpsit to recover on a guarantee of stock sold. Before HENDERSON, P. J.

The facts sufficiently appear from the following charge of the court:

On the 1st day of February, 1893, the defendant gave to the plaintiff a writing in the words following : " For value received I promise to pay A. B. Floyd eight hundred dollars or eight shares of Whipple Loan and Trust company stock. And I guarantee said stock and the payment thereof at one hundred cents on the dollar for two years from date hereof. And at any time the said A. B. Floyd wishes to dispose of said stock at its full face value I am to have first choice to purchase and redeem the same."

After the execution of this paper the defendant assigned to the plaintiff eight shares of stock of the Whipple Loan and Trust Company of the par value of $100 each. This certificate was returned to the company by Mr. Hotchkiss, as the evidence indicates, and in lieu thereof a new certificate was issued to Mr. Floyd, the plaintiff, for the eight shares of stock. This new certificate was issued on March 23, 1893, some seven weeks after the execution of the paper which has just been read in your hearing.

Plaintiff says he has received no dividends on his stock; that it has no market value ; that he has endeavored to ascertain its actual value and is unable so to do ; and that, having received such information, not having found a market for it anywhere, he called upon the defendant to make good the undertaking contained in the paper upon which the action is brought; that on the 12th day of January, 1894, through his attorney he tendered an assignment of the stock back to Mr. Hotchkiss, the defendant, and made a demand upon him to make its par value good to him in money, and that Mr. Hotchkiss declined to accept the assignment of the stock. He further alleges that at some time prior to the 12th day of January, 1894, he called upon Mr. Hotchkiss to take up the stock or to make its value good to him, and that Mr. Hotchkiss refused to accept the stock.

[The undertaking which the defendant entered into in the execution of this paper is apparently an agreement on his part that if Mr. Floyd take the stock of the Whipple Loan and Trust company, he, the defendant, will undertake that it shall have a value equal to its par value for two years from the date of the execution of this paper; that would be until the 1st day of Feb-

ruary, 1895; and that he would guarantee the stock to have a selling value during that period equal to its face value.] [3] He further elected to have the right to take it within that time at its par value before it should be offered by Mr. Floyd to anybody else at its par value. [Such being the terms of the undertaking of the defendant, you are to inquire whether the stock so turned over by the defendant to the plaintiff has had a value equal to its par value, or any selling value at all, during the period from February 1, 1893, to February 1, 1895. The agreement of Mr. Hotchkiss was a guaranty that the stock should have a value of one hundred cents on the dollar; and he guarantees the payment of the stock at any time within two years at the same price.] [4]

[Whatever may have been the intention of the parties, the paper means upon its face that Mr. Hotchkiss will give a value to the stock at any time within two years, of one hundred cents on the dollar, and that if Mr. Floyd cannot get that value elsewhere for it Mr. Hotchkiss will make it good at that price.] [5] This may not have been what the parties intended. Whether it is or not, we are not informed. We are required to dispose of the case upon the evidence which is introduced. The parties in the absence of fraud, accident or mistake are presumed to have intended what they expressed in writing and signed at the time. And this paper having been executed by Mr Hotchkiss and its execution not being denied, the parties are affected and bound by its terms.

[Plaintiff alleges that this stock has had no market value; that he cannot ascertain from the managers of the company what its value is; that he has not been able to sell it; and that the defendant has refused to take it off his hands or to make good this contract. If it has no selling value, if there is no demand for it, if Mr. Floyd cannot get any price for it, then there is a breach of the undertaking of Mr. Hotchkiss, and if at any time before the 1st day of February, 1895, between that period and the 1st day of February, 1893, Mr. Floyd was unable to get a price for the stock or to get any offer for it or to dispose of it in the market, then Mr. Hotchkiss is bound under the terms of his agreement to make the stock good at its face value.] [6]

[It is alleged on the part of the defendant that it has a value;

that stock of the company was owned by some persons in this vicinity who have got it by some means, and that it has a value. Has it a value which is available to Mr. Floyd, or did it have up to the 1st of February, 1895, a value which was available to Mr. Floyd under the terms of this agreement by which Mr. Floyd was guaranteed the payment of the stock between February, 1893, and February, 1895, at one hundred cents on the dollar? Does the evidence of the defendant lead you to believe that it had such a value in the hands of Mr. Floyd? If not, plaintiff, having tendered a return of the stock and having called on Mr. Hotchkiss to make his contract good, is entitled to damages; which, in the absence of evidence that the stock had any value at all, would be the whole of the par value of the stock, in which event Mr. Hotchkiss would be entitled to take up the certificate of stock which has been heretofore tendered to him. If the stock has a selling value and you know what that is, Mr. Hotchkiss would be liable for the difference between the selling value of the stock and its par value. I do not recall any evidence, however, which would lead you to conclude that the stock would sell for any particular amount if offered by Mr. Floyd.] [7]

[If you find for the plaintiff you will find the amount of damage which he has sustained under the contract, which would be the amount of money he is entitled to receive, $800, from the 1st day of February, 1893, less any dividend he may have received upon the stock, with interest at six per cent, if you find that the stock has no selling value and is not available in the hands of Mr. Floyd to be disposed of at any price. If you find that it has a fixed value, Mr. Floyd would be entitled to the difference between the value which he can get out of the stock by selling it and the amount which Mr. Hotchkiss guaranteed that it should be worth to Mr. Floyd, to wit: one hundred cents on the dollar.] [8]

Verdict and judgment for plaintiff for $960.   Defendant appealed.

*Errors assigned* were (1) In overruling defendant's objection to the following question propounded to plaintiff: "Q. I will ask you once more what was your inquiry of Mr. Whipple as to the value of that stock?"   Objected to as irrelevant and incompetent.   By the Court: "It is certainly competent to ascer-

220      FLOYD *v.* HOTCHKISS.

Assignment of Errors—Opinion of the Court.    [5 Pa. Superior Ct.

tain the value of the stock; whether his opinion is given or not is another thing. He is now telling what he learned from one of the officers of the company as to value. I think that is competent." Exception asked for and allowed. "*Answer :* Whipple wrote me that the company was in such shape that they couldn't put no value on this." (2) In ruling out the answer of the witness, A. A. Whipple, the president of the Whipple Loan & Trust Co., to the first, second, fifth and sixth cross interrogatories, and the exhibits attached, as follows: "1st. Please give the assets and liabilities of the Whipple Loan & Trust Co. as it appears on your books June 22, 1893, and the value of the stock on that day. Also the assets and liabilities of the said company on June 23, 1892, and the value of the stock on that day. 2d. Please give the assets and the liabilities of the Whipple Loan & Trust Co. on February, 1893, and at other dates up to and including February 1, 1895. 5th. Please state what property your company has invested its funds in, and whether or not it is now and always has been worth par or the stock worth 100 cents on the dollar. 6th. Please attach to your testimony the regular annual statements of the Whipple Loan & Trust Co. from July 1, 1892, up to and including July 1, 1895." (3–8) Portions of the judge's charge, reciting same.

*H. J. Humes,* for appellant.

*Pearson Church,* for appellee.

OPINION BY BEAVER, J., July 23, 1897:

As this case finally went to the jury in the court below, the recovery was based upon the following writing given by the defendant to the plaintiff :

" $800.00                              February 1st, 1893.

For value received, I promise to pay A. B. Floyd Eight hundred dollars ($800.00) or eight shares of Whipple Loan & Trust Company stock, and I guarantee the said stock and the payment thereof at one hundred cents on the dollar for two years from the date hereof, and at any time the said A. B. Floyd wishes to dispose of the said stock at its full face value I am to have the first choice to purchase and redeem the same.

Witness: A. MOOK.                 D. A. HOTCHKISS."

It is evident that this paper constitutes a warranty and not a guaranty. It is the promise to pay $800 or eight shares of the Whipple Loan & Trust Company stock, warranted to be worth $800. The eight shares of stock having been transferred to the plaintiff, there was and could be no right on his part to sue for or attempt to recover the value thereof from the Whipple Loan & Trust Company. A corporation cannot be compelled by an action at law to make good its own stock in the hands of its stockholders, hence the terms and conditions of a technical guaranty could not in the nature of things be enforced. The writing constituted a warranty of which there was a breach whenever the stock fell below its par value in the market, and an action was maintainable thereon whenever the defendant after notice and upon demand failed to make it good. The question of value involved is not one of real or ultimate value but of present, available money value in the hands of the plaintiff. The testimony of both plaintiff and defendant was such as would justify the court in submitting to the jury and would justify the jury in finding that the value of the stock was not such as would enable the plaintiff to use it in lieu of money. In this view of the case we can see no error in the portions of the charge of the court assigned for error in the third, fourth, fifth, sixth seventh and eighth assignments.

As to the second assignment of error it is not made in accordance with our rules, and in addition thereto no exception was allowed, although one was asked, to the ruling of the court upon the refusal to admit the statements of the Whipple Loan & Trust Company attached to the depositions of A. A. Whipple at the trial. Why the court failed to allow the exception asked for we do not understand. It was evidently an oversight, but the record fails to show the allowance of an exception, and in its absence we cannot consider the question involved. The second assignment is therefore overruled.

The first assignment of error must be sustained. If the Whipple Loan & Trust Company had been a party to the suit in any way, the declarations of its officers would have been competent evidence. The scope of the inquiry was entirely relevant but the testimony offered was certainly incompetent. A. A. Whipple, the president of the trust company, was a competent witness. His testimony had been taken and was read by the

plaintiff as a part of his case. Why then should his mere declarations verbal or written as to the principal question in controversy be competent? The testimony, as it went to the jury, was the recollection of the plaintiff as to the contents of a letter, alleged to be lost, written by the president of the trust company, himself a witness in the case, relating to the value of the stock which was the principal subject of inquiry. This is surely a violation of the elementary principles of the law relating to hearsay evidence, and cannot by any stretch of imagination or nicety of reasoning be brought within any of the exceptions relating thereto. The offer should have been rejected and the testimony excluded. For this reason the judgment must be, as it is hereby, reversed and a new venire awarded.